# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>THOMAS WOHLMAN,<br><br>Defendant. | No. 09-CR-0047-LRR<br><br>REPORT AND RECOMMENDATION |

On the 9th day of October, 2009, this matter came on for hearing on the Motion to Suppress Statement (docket number 16) filed by the defendant on October 1, 2009. The Government was represented by Assistant United States Attorney Mark A. Tremmel. Defendant Thomas Wohlman appeared personally and was represented by his attorneys, Alfred E. Willett and Steven A. Kloberdanz.

## I. PROCEDURAL HISTORY

Defendant was charged by Indictment on July 22, 2009 with two counts of attempted enticement of a minor, in violation of 18 U.S.C. § 2422(b). On September 3, 2009, Defendant appeared and entered a plea of not guilty. Trial is scheduled before Chief Judge Linda R. Reade on November 2, 2009.

## II. ISSUE PRESENTED

Defendant asserts that he asked to speak to an attorney during a custodial interrogation on March 16, 2007, and asks that the Court suppress statements made by him after he made the request to speak to counsel.

## III. RELEVANT FACTS

While no testimony was introduced at the time of hearing, the facts underlying the instant motion to suppress are largely undisputed. An "incident report" prepared by Investigator Robert E. Kramer of the Cedar Falls police department, a "Miranda Warning

and Waiver" signed by Defendant, and the deposition testimony of police officers Tim Smith and Michael Johnson, Jr., were introduced at the hearing, without objection, as Defendant's Exhibits A-D.

At 7:30 a.m. on March 16, 2007, Investigator Kramer was online in a "chat room,"[1] posing as a 15-year-old girl. At 7:36 a.m., Kramer was "approached" by a person using the screen name "tom68iowa." Apparently, "Tom" was able to view an "aged regressed photo of a female Cedar Falls Police Officer," and his first comment was "wow you look hot."[2] Kramer told "Tom" that she was 15 years old. The chat quickly became sexually explicit, with "Tom" asking "have you felt a hard cock" and "have you been fingered." At Kramer's request, "Tom" provided a picture of himself. "Tom" asked "Monica"[3] whether she had "ever rubbed yourself" and asked "would you do it now for me." "Tom" acknowledged that he "could get in trouble ... because your young." "Tom" told "Monica" that "I would love to teach you about sex." "Tom" states that "im scared" because "I could go to jail for meeting you." After additional discussion, "Tom" and "Monica" agree to meet at Wal-Mart in Cedar Falls at 10:30 that morning.

Investigator Kramer advised the Shift Supervisor that he would possibly be meeting an internet predator at Wal-Mart that morning, and Officers Tim Smith and Mike Johnson were assigned to assist. The officers proceeded to Wal-Mart and waited until 10:50 a.m., but "Tom" did not show up.

At 11:04 a.m., "Monica" resumed the chat, with "Tom" saying that he didn't appear because "im so freaked about meeting you what if you're a cop." "Tom" told

---

[1] It is the Court's understanding that a "chat room" permits two persons online to communicate with each other nearly instantaneously, similar to instant messaging.

[2] At the hearing on Defendant's motion to compel (docket number 17), held contemporaneously with the hearing on the instant motion to suppress, Defendant offered as Exhibit L a print-out produced by the Government, purporting to be the "chat" between Kramer and Defendant.

[3] Investigator Kramer used the screen name "Monica."

2

"Monica" that "I know a lot of people have been busted for meeting underage girls in cedar falls." Nonetheless, another meeting at Wal-Mart was scheduled.

"Tom" had called a cell phone number provided by Kramer in order to listen to "Monica's" voicemail. The caller ID showed the call came from a number registered to Thomas Wohlman, the defendant. A check online of vehicle registrations showed two white trucks owned by Defendant, including a 1999 GMC Sierra, with license number 013CF. "Tom" had told "Monica" that he would be driving a white pickup truck.

At 12:10 p.m., Investigator Kramer observed a white Sierra with license number 013CF drive into the Wal-Mart parking lot. The vehicle drove around "for several minutes" and then parked. A white male got out of the vehicle and walked into the store, but exited about two minutes later and drove away. At Kramer's direction, Officers Smith and Johnson pulled the vehicle over in a nearby parking lot. The driver, identified as Defendant Thomas Wohlman, was advised by Kramer that he was suspected of "speaking with a 15 year old girl" on the internet that morning. Defendant was handcuffed, placed in the back of the squad car, and transported to the Cedar Falls police station.

Upon arrival at the police station, Defendant was advised of his *Miranda* rights. Defendant signed a written waiver (Defendant's Exhibit B), said he understood his rights, and agreed to speak with Investigator Kramer. Defendant admitted that he had been chatting online that morning with a girl from Cedar Falls. He identified the "chat" as having two sessions. He acknowledged seeing a photo of "Monica" (although he recalled her name as "Melanie") and admitted sharing a photo of himself. Defendant denied knowing "Monica's" age. Defendant admitted that he thought he was going to meet "Monica" at Wal-Mart and when asked why, said "maybe oral sex." Defendant acknowledged that he "made a poor decision." After additional discussion, Investigator Kramer asked Defendant whether he could search his truck. Defendant refused, saying "he'd have to call his lawyer." At about that time, Defendant said he "would do anything to fix this."

Defendant's interview with Investigator Kramer was videorecorded. Unfortunately, neither what is believed to be the original of the DVD, or various copies of the DVD, are now viewable.[4] Investigator Kramer is now retired and did not testify at the instant hearing. Accordingly, the only evidence at the hearing on this issue is the description of Defendant's statement found in Kramer's incident report (Defendant's Exhibit A).

After questioning Defendant at some length, Investigator Kramer asked Defendant for consent to search his pickup truck:

> I asked Wohlman if he would give me permission to search his truck for evidence of this investigation, and he denied my request, saying that he'd have to call his lawyer. In the same line of answering, Wohlamn [sic] stated that he "would do anything to fix this. . . ."

*See* Defendant's Motion to Suppress, Exhibit A at 6 (docket number 16-3 at 6). Investigator Kramer then resumed his questioning, this time asking about previous chats which Defendant had with "abby15girl" in the fall of 2005 and spring of 2006.[5] Defendant admitted to speaking with other girls on the internet, but couldn't recall "if they were younger." Defendant said he "might of" exchanged phone numbers with "abby15girl."

## IV. DISCUSSION

It is undisputed that while being interviewed by Investigator Kramer at the Cedar Falls police station on March 16, 2007, Defendant was subjected to a custodial

---

[4] The apparent inaccessibility of the DVDs is a subject of Defendant's separate Motion to Compel (docket number 17).

[5] Defendant was investigated for child enticement during that time by DCI Agent Robert Larsen. Larsen had "a number of chats" with Defendant at that time, using a screen name of "abby15girl." Investigator Kramer learned of the prior investigation when Defendant told Kramer his son was murdered in October 2006. Kramer called the Sheriff to obtain confirmation of the murder, and was told to call Agent Larsen regarding the previous investigation.

4

interrogation. Accordingly, he was entitled to all of the protections afforded by *Miranda*.[6] Defendant concedes that he was given a *Miranda* warning, and initially waived his *Miranda* rights. Defendant argues, however, that he later invoked his right to counsel, and that any questioning after that time violated his rights under the Fifth and Fourteenth Amendments, and must be suppressed. The Government argues that Defendant's reference to calling his attorney was ambiguous, or limited in its scope.

Initially, Defendant waived his *Miranda* rights and agreed to talk to Investigator Kramer. As indicated on the written Miranda Warning and Waiver signed by Defendant in this case, however, a person being questioned "can decide at anytime [sic] to exercise these rights and not answer questions or make any statements."[7] If he invokes his right to counsel, then questioning must cease.

> If the suspect effectively waives his right to counsel after receiving the *Miranda* warnings, law enforcement officers are free to question him. But if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect reinitiates conversation.

*Davis v. United States*, 512 U.S. 452, 458 (1994) (internal citation omitted). *See also Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981) (holding that after an accused expresses "his desire to deal with the police only through counsel," he may not be interrogated further "until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police"). Here, the Government does not argue that Defendant "reinitiated" the interview after requesting counsel. Rather, the Government argues that Defendant's reference to counsel was ambiguous, or that it was limited to the requested search of his truck.

---

[6] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[7] *See* Defendant's Motion to Suppress, Exhibit B (docket number 16-3 at 7).

5

Invocation of the *Miranda* right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *Davis*, 512 U.S. at 459 (quoting *McNeil v. Wisconsin*, 501 US 171, 178 (1991). That is, "the suspect must unambiguously request counsel." *Id.*

> [I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning.

*Id.*

According to Investigator Kramer's report, when asked if he would give permission for a search of his truck, Defendant said "that he'd have to call his lawyer." The Government apparently concedes that Kramer was thereafter prohibited from seeking further consent to search the truck, unless Defendant reinitiated that discussion. The Government argues, however, that Defendant's reference to calling his lawyer was limited to Kramer's request to search the truck and is, at best, ambiguous on whether it was intended to refer to any further questioning. "If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him." *Id.* at 461-62.

In resisting Defendant's motion, the Government cites *Connecticut v. Barrett*, 479 U.S. 523 (1987). There, the defendant was transported to the police station and advised that he was a suspect in a sexual assault. The defendant signed a form acknowledging that he had received a *Miranda* warning. The defendant told officers that "he would not give the police any written statements but he had no problem in talking about the incident." *Id.* at 525. The defendant then made oral incriminating statements. The Court upheld the defendant's conviction, finding that his "limited requests for counsel" did not prohibit further interrogation. *Id.* at 529.

Similarly, in *United States v. Boyer*, 914 F.2d 144 (8th Cir. 1990), the defendant was questioned after a package containing methamphetamine was delivered to his house.

The defendant "agreed to answer questions, proceeded to answer some questions and not others, and then said he would assist in making a tape-recorded telephone call to the person that had sent the package only after he had talked to an attorney." *Id.* at 146. In finding that his statements were admissible against him, the court held that the defendant's "request for counsel applied only to making a tape-recorded telephone call." *Id.*

In *United States v. Jacobs*, 97 F.3d 275 (8th Cir. 1996), the defendant, after being advised of and waiving his *Miranda* rights, said he would want a lawyer "in the event he had to take a polygraph test." *Id.* at 280. The district court found that the defendant's request for an attorney "was limited to the specific circumstance of taking a polygraph test." *Id.* Since the defendant did not take a polygraph test, the Eighth Circuit court found that he "was not denied his constitutional right to counsel," and his statements were admissible in evidence. *Id.*

Turning to the facts in the instant case, after being advised of his *Miranda* rights, Defendant signed a waiver, indicating that he understood his rights and "I wish to speak with this member of the Cedar Falls Police Division."[8] Defendant then answered a number of questions and made admissions regarding his chat with "Monica" and his trip to Wal-Mart with an intention to engage in oral sex. When asked for permission to search his truck, however, Defendant refused, "saying that he'd have to call his lawyer."

The Court finds that Defendant did not make an unambiguous or unequivocal request for counsel before questioning could proceed further. Rather, he told Investigator Kramer that before he would consent to a search of his truck "he'd have to call his lawyer." In light of all the surrounding circumstances, a reasonable officer would not construe Defendant's response as an invocation of counsel for all purposes. Instead, an officer could reasonably construe Defendant's remark regarding calling counsel as limited to the search of his vehicle. That is, Defendant made an unambiguous request to call his attorney before consenting to a search of his truck, but did not make an unambiguous or

---

[8] *See* Defendant's Motion to Suppress, Exhibit B (docket number 16-3 at 7).

7

unequivocal request to call counsel before answering any further questions. In this way, the facts are indistinguishable from Boyer (limiting a request for counsel to making a tape-recorded call to a drug source) and Jacobs (limiting a request for counsel to taking a polygraph exam). Since Defendant did not make an unambiguous or unequivocal request for counsel, Investigator Kramer was not obligated to stop questioning him. *Davis*, 512 U.S. at 461-62. Accordingly, the Court concludes that the continued examination of Defendant did not violate his Constitutional rights.

## V. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the District Court **DENY** the Motion to Suppress Statement (docket number 16) filed by Defendant on October 1, 2009.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1)(B), that within ten (10) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *Defendant is reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if Defendant is going to object to this Report and Recommendation, he must promptly order a transcript of the hearing held on October 9, 2009.*

DATED this 13th day of October, 2009.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA.